IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD R. McPHAIL, | : | |
|     Plaintiff | : | Civil Action No. 1:08-cv-0029 |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| ES3 LLC, | : | |
|     Defendant | : | |

## MEMORANDUM

Pending before the Court are a motion for summary judgment by Plaintiff Donald R. McPhail (Doc. No. 63), and a motion for partial summary judgment by Defendant ES3 LLC (Doc. No. 67). The motions have been fully briefed and are ripe for disposition. Because no genuine issues of material fact remain as to Defendant's claims for partial summary judgment, the Court will grant Defendant's motion. However, because genuine issues of material fact exist as to the balance of Plaintiff's claims for summary judgment, the Court will deny Plaintiff's motion.

**I.  FACTUAL BACKGROUND[1]**

Plaintiff Donald R. McPhail is a resident of Seven Valleys, Pennsylvania. (Doc. No. 1 ¶ 3.) He began employment as a temporary employee with Defendant ES3 LLC in November 2003. (Doc. No. 64 ¶ 2.) On February 15, 2004, Plaintiff was hired full-time by Defendant as a fault chaser. (Doc. No. 69 ¶ 9.) Defendant ES3 LLC warehouses grocery products for delivery to grocery retailers. (Doc. No. 69 ¶ 1.) Plaintiff was employed at Defendant's warehouse in York,

---

[1] Pursuant to Federal Rule of Civil Procedure 56, the Court will "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Pennsylvania. (Id.)

After Plaintiff completed 90 days of employment with Defendant, he became eligible for employment benefits offered by Defendant and received a benefits packet. (Doc. No. 69 ¶ 11.) Information regarding the voluntary, employee-paid long-term disability insurance policy through Hartford Life and Accident Company was provided to Plaintiff within the packet. (Id.; see also Doc. No. 69, Ex. 4 ¶ 4 & Ex. A.)

On September 20, 2006, Plaintiff received a performance evaluation in which he achieved a total score of 48 out 70. (Doc. No. 69 ¶ 13.) This score placed him in the lower part of the "Good" rating category, which encompassed scores from 47 to 60. (Id.) Plaintiff received a fifteen-cent raise after this evaluation. (Id. ¶ 14.)

On February 12, 2007, Plaintiff received a performance evaluation in which he achieved a total score of 35 out of 70. (Doc. No. 69 ¶ 15.) This score placed him in the middle part of the "Average" rating category, which encompassed scores from 26 to 46. (Id.) Plaintiff received a fifty-cent raise in connection with his evaluation. (Id.)

Plaintiff had foot surgeries in both 2005 and 2006. (Doc. No. 64 ¶ 3.) In April 2005, Plaintiff went to Defendant's human resources department where he requested FMLA and short-term disability leave in connection with surgery that was scheduled for his foot on April 15, 2005. (Doc. No. 69 ¶ 18.) Plaintiff was granted leave and remained on short-term disability for approximately three months. (Id.)

In December 2005, Plaintiff went to Defendant's human resources department to submit paperwork for leave in connection with surgery scheduled for January 2006 on both his feet. (Doc. No. 69 ¶ 19.) Plaintiff was granted the requested leave and remained on short-term

disability for approximately six months. (Id.)

In early 2006, while he was on leave for his second foot surgery, Plaintiff began treatment for cancer. (Doc. No. 69 ¶ 20.) Plaintiff tried to keep his cancer treatments from affecting his work. (Id.) He appeared for his scheduled shift even when he did not feel well. (Id.) On some occasions, he felt too sick to continue working and went home. (Id.) However, Dan McClucas, the lead who was responsible for keeping the grocery warehouse operational during the night shift, was not aware that Plaintiff missed any time at work because of his cancer treatments. (Id. ¶ 21.) Plaintiff left work on August 1, 2006, September 5, 2006, September 26, 2006, and November 14, 2006. (Id. ¶ 22.)

In April 2007, Plaintiff was diagnosed with heart disease and had heart surgery. (Doc. No. 69 ¶ 26.) Upon his request, Plaintiff was granted short-term disability leave. (Id.) He began receiving short-term disability benefits on April 10, 2007. (Id.)

Long-term disability insurance is available to Defendant's employees through The Hartford insurance company. (Doc. No. 69 ¶ 25.) Such long-term insurance is fully funded by Defendant's employees who opt to participate in the program; the insurance program is not contributed to by Defendant. (Id.)

In August 2007, The Hartford gave Plaintiff notice that his short-term disability benefits would end in October 2007. (Doc. No. 69 ¶ 27.) At that time, Plaintiff completed the forms to claim long-term disability benefits, which were subsequently approved by The Hartford. (Id.)

On October 9, 2007, after having received short-term disability for 180 days, Plaintiff's short-term disability benefits were exhausted. (Doc. No. 69 ¶ 28.) Plaintiff was removed from Defendant's payroll. (Id.) On October 10, 2007, Plaintiff began receiving long-term disability

from The Hartford.² (Id.)

In January 2008, Plaintiff moved from Pennsylvania to Oregon. (Doc. No. 69 ¶ 30.)  In early April 2008, The Hartford attempted to contact Plaintiff to inform him that pursuant to the terms of his long-term disability policy, he needed to provide proof of his ongoing disability and his inability to perform any one of the essential duties of his occupation. (Id. ¶ 31.)  On April 24, 2008, The Hartford sent a letter to Plaintiff's medical provider to obtain additional information regarding Plaintiff's disability; however, Plaintiff's doctor responded that he had not seen Plaintiff since July 2007. (Id.)  Because Plaintiff failed to respond to its inquiries to provide proof of his ongoing disability, The Hartford terminated Plaintiff's long-term disability benefits effective May 15, 2008. (Id. ¶ 33.)

## II.  STANDARD OF REVIEW

Both parties have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient

---

² Paragraph 29 of Defendant's statement of the facts incorrectly cites the date of Plaintiff's benefits beginning as October 10, 2008, rather than October 10, 2007.  However, this typo is revealed in Paragraph 27 which cites to October 10, 2007, as the applicable date. (See Doc. No. 69 ¶¶ 27, 29.)

4

evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322-23. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

## III. DISCUSSION

Plaintiff has asserted claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et. seq.; Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et. seq.; and Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et. seq.

Plaintiff has moved for summary judgment as to all claims. Defendant has moved for partial summary judgment as to one of Plaintiff's ADEA claims and as to all of Plaintiff's FMLA claims. The Court will address each claim for relief in turn.

### A. ADEA Claims

The Court first turns to Plaintiff's summary judgment motion on his ADEA claims. "The ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, term, conditions, or privileges of employment on the basis of their age." Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001) (citing 29 U.S.C. § 623(a)(1)). Age discrimination may be established by direct or indirect evidence. Id. Under the ADEA, the parties' burdens in establishing and defending claims by indirect evidence are determined by the procedure set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000). Under the McDonnell Douglas framework, a plaintiff must first produce evidence sufficient to convince a reasonable factfinder as to all of the elements of a prima facie case of discrimination. Stanziale, 200 F.3d at 105. As the Third Circuit has explained:

> When evaluating ADEA discrimination claims based on indirect evidence, a plaintiff may establish a prima facie case of age discrimination under the ADEA by demonstrating that she: (1) was a member of a protected class, i.e., that she was over forty, (2) is qualified for the position, (3) suffered an adverse employment decision, (4) and was ultimately replaced by a person sufficiently younger to permit an inference of age discrimination. To survive a motion for summary judgment, the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of the prima facie case.

Duffy, 265 F.3d at 167 (citations, footnotes, and interior alterations omitted).

If a plaintiff establishes a prima facie case, "the burden of production (but not the burden

of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that the defendant had a legitimate, nondiscriminatory reason for the adverse employment decision." Stanziale, 200 F.3d at 105 (citations and internal alterations omitted). "If a defendant satisfies this burden, a plaintiff may then survive summary judgment by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id.[3]

In his supporting brief to his motion for summary judgment, Plaintiff contends that although ". . . Defendant hired [Plaintiff] when he was over age 40, it then did not give him raises, call for overtime, or award promotions that it gave to younger employees; further it did not provide the long-term disability coverage that Defendant paid for during his employment[.]" (Doc. No. 65 at 2-3.) Altogether, Plaintiff's ADEA claim can be broken down into four different claims of age discrimination: (1) inadequate hourly rate increases, i.e., raises; (2) missed

---

[3] In arguing what is necessary for Plaintiff to produce to warrant summary judgment in his favor, Plaintiff states: "On all of these bases it is clear that the sole factor was Mr. McPhail's age. Any other alleged reason is mere pretext. Once Plaintiff has met his burden, there is no further burden-shifting. Gross v. FBL Fin. Servs., 129 S. Ct. 2343 (2009). Plaintiff is entitled to summary judgment in his favor on the ADEA claim." (Doc. No. 65 at 5.)

Plaintiff misreads the holding of the Supreme Court in Gross and the burden-shifting framework at the summary judgment stage. In Gross, the Court addressed a plaintiff's burden of persuasion at trial on a mixed-motive age discrimination claim and held that the burden of persuasion does not shift to the defendant. Gross, 129 S. Ct. at 2352 ("[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action."). In regard to the burden of production, however, courts within the Third Circuit continue to apply the McDonnell Douglas framework. See Heilman v. Allegheny Energy Serv. Corp., No. 08-4523, 2009 WL 3792419, at *2 (3d Cir. Nov. 12, 2009) (unpublished opinion); see also Ferruggia v. Sharp Electronics Corp., No. 05-5992, 2009 WL 2634925, at *3-4 (D.N.J. Aug. 25, 2009).

promotions; (3) failure to assign him overtime when overtime was available; and (4) denial of long-term disability benefits. While Plaintiff has moved for summary judgment as to all his ADEA claims, Defendant has only moved for summary judgment on the ADEA claim encompassing denial of long-term disability benefits to Plaintiff. The Court will address each of the ADEA claims in turn.

First, regarding his claim that he was discriminated against by inadequate hourly rate increases, Plaintiff points to a February 2007 performance evaluation performed by Tom Gemmell, Defendant's plant manager that awarded Plaintiff a raise of only 50 cents an hour and marked Plaintiff down for not completing work orders. (Doc. No. 65 at 3.) Plaintiff argues that failure to give him a larger raise was "mere pretext" and that "it is clear from deposition testimony that work orders were not always required at the time [Plaintiff] was employed and that the policy of filing them was not enforced." (Id.)

In its brief opposing Plaintiff's motion for summary judgment, Defendant has put forward testimony to back its legitimate, nondiscriminatory reason that pay increases are the product of performance evaluations. (See Doc. No. 77 at 4.) Defendant argues:

> Nothing in the record suggests that these hourly rate increases were the result of anything other than an honest evaluation of [Plaintiff] by his supervisor that he did not work orders as required and the effect of the cap. [Plaintiff] points to no credible evidence of the hourly rate increases of similarly situated younger employees; thus, the Court has no basis on which to infer disparate treatment of [Plaintiff].

(Doc. No. 77 at 5.) Although Plaintiff has put forward evidence that the work order policy was not completely enforced, Plaintiff has failed to put forward sufficient evidence to warrant summary judgment in his favor. Therefore, because there remains a genuine issue regarding the basis for Plaintiff's wage increase, summary judgment must be denied on this claim.

8

Second, Plaintiff's motion for summary judgment on his promotion claim also fails because a genuine issue of material fact exists. Plaintiff contends that Defendant failed to promote him to third shift lead in October 2006, and instead awarded the position to two younger employees. (Doc. No. 65 at 3-4.) However, Defendant has put forward evidence to show that it promoted the two employees after putting all the candidates through an interview process.[4] (Doc. No. 77 at 6.) As a result of the interview process, "[t]he interviewers believed that [the two other employees] were more qualified in terms of mechanical and technical aptitude than [Plaintiff]." (Id. at 6-7.) Although Plaintiff argues that Defendant had no valid business reason for denying him the lead position (Doc. No. 65 at 3-4.), he has not put forward sufficient evidence to warrant summary judgment in his favor because a genuine issue of material fact remains.

Third, Plaintiff's motion for summary judgment on his ADEA overtime claim also fails. Plaintiff claims that Defendant violated the overtime policy, which was designed to call up volunteers by seniority, and that there was "no valid business reason for the failure to follow that procedure, such that age can only be the reason." (Doc. No. 65 at 4.) But, as Defendant argues, Plaintiff's "suggestion that [Defendant's] management distributed overtime on the basis of seniority is very much in dispute." (Doc. No. 77 at 7.) Two shift leads that were responsible for getting employees to work overtime during the period that Plaintiff complains of testified in

---

[4] Plaintiff asserts in his reply brief that "[t]he record shows that the younger employees . . . were promoted prior to applications, prior to interviews, and prior to any announcements was [sic] made." (Doc. No. 81 at 3.) In doing so, Plaintiff relies on the deposition testimony of Eddie Santiago, one of the younger employees who was promoted to third shift lead. (See Doc. No. 82.) However, Santiago's testimony does not fully support Plaintiff's claim. To the contrary, Santiago testified in his deposition that he filled out an application and went through the interview process before he was promoted. (See Doc. No. 77, Ex. 2 at 15-16, 19.) Santiago testified that prior to being promoted, he was already in the lead position because of discord that had developed at the plant. (Id. at 22.) At the very least, a genuine issue of material fact remains.

deposition that seniority was not the criteria. (Id. at 7-8.) Another shift lead testified that it was his own policy to call employees by seniority order, that he was unaware how other leads assigned overtime, and that he had never been given instructions to deny Plaintiff overtime. (Id. at 8.) As Defendant points out, "there is at best a dispute of fact as to whether the leads used seniority as a criterion, whether there was overtime that [Plaintiff] could have worked, and whether management directed the shift leads not to offer it to him because of his age." (Id. at 8.) Therefore, genuine issues of material fact remain, and summary judgment is inappropriate.

Plaintiff's final claim for ADEA relief is that Defendant denied him long-term insurance benefits on the basis of his age. (Doc. No. 65 at 4-5.) Defendant has also moved for summary judgment as to this claim. Plaintiff states that he "paid the premiums for a [long-term] policy during his employment," but "[w]hen he was at the point he needed to convert his short-term disability coverage to long-term coverage, he was told that he was too old and instead had to apply for Social Security disability." (Id. at 4.) In its brief in support of its own motion for summary judgment, Defendant claims that Plaintiff "cannot state a violation of the ADEA because the undisputed evidence is that [Plaintiff] received long-term disability benefits from the point that his short-term disability benefits expired until he failed to provide proof of disability as requested by the carrier." (Doc. No. 68 at 4-5.) Specifically, Plaintiff was granted short-term disability benefits in April 2007 after undergoing heart surgery. (Doc. No. 69 ¶ 26.) In October 2007, he began receiving long-term disability benefits from The Hartford. (Id. ¶ 27.) However, Plaintiff's long-term disability benefits were terminated on May 15, 2008, for failure to respond to The Hartford's request that he provide proof of ongoing disability. (Id. ¶¶ 31-33.)

In review of the cross-motions for summary judgment on this issue, the Court finds that

Plaintiff has failed to put forward sufficient evidence to establish a prima facie claim for the denial of long-term disability coverage, as his claim is clearly countered by the record.[5] Therefore, because there is no genuine issue of material fact as to Plaintiff's long term disability benefits, the Court will grant summary judgment to Defendant on this portion of Plaintiff's ADEA claim.

### B.     ADA Claims

Next, Plaintiff has moved for summary judgment as to his ADA claims. To establish a prima facie case of discrimination under the ADA, a plaintiff must show (1) that he has a disability within the meaning of the ADA, (2) that he is qualified to perform the essential functions of his job, with or without reasonable accommodation, and (3) that he suffered an adverse employment action because of his disability. See Turner v. Hershey Chocolate U.S.A., 440 F.3d 604, 611 (3d Cir. 2006). In his motion for summary judgment, Plaintiff alleges that Defendant "discriminated again [sic] him in terms of raises/promotions, harassment, and not offering light duty work, all on account of his disability or a perceived disability, in violation of the ADA." (Doc. No. 65 at 5.) Plaintiff's claims are best analyzed as an accommodation claim, a claim for wage increases, and a harassment claim.

The Court will first address Plaintiff's accommodation claim. "Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." Taylor v.

---

[5] Plaintiff concedes in his reply to Defendant's statement of the facts that he agrees with Defendant's summary. (See Doc. No. 76 at 1 ("Any paragraph not listed and responded to below is agreed with by Plaintiff.").) In addition, Plaintiff fails to counter Defendant's argument in his brief in opposition to Defendant's motion for summary judgment. (See Doc. No. 75.)

Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999). In order to establish an accommodation claim, a plaintiff must satisfy the prerequisites for the position and "must be able to 'perform the essential functions of the position held or desired, with or without reasonable accommodations.'" Id. at 311 (citations omitted). Both the employer and the employee "'have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith.'" Id. (quoting Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997)). As such, the employee is under a preliminary duty to provide notice that makes it "clear that the employee wants assistance for his or her disability." Id. at 313. "In other words, the employer must know of both the disability and the employee's desire for accommodations for that disability." Id.

Plaintiff has argued that he could be accommodated by being allowed to perform light duty. (Doc. No. 65 at 11.) However, the Court agrees with Defendant that, given the strenuous nature of the fault chaser job, genuine issues of material fact exist over whether a reasonable accommodation was even available to Plaintiff. (See Doc. No. 77 at 11-12.) In the present case, a jury could find that such an accommodation would not have allowed Plaintiff to "perform the essential functions of [his] job." See Taylor, 184 F.3d at 320. As the Defendant asserts:

> [The] fault chaser job . . . was not sedentary work. [Defendant] employs fault chasers to locate and fix problems with the automatic conveyor system that transports grocery products on pallets from the loading docks to racks that are as much as 600 feet away and 110 feet high. . . . [Plaintiff] admitted in his deposition that the job required him to lift and move objects weighing 50 to 60 pounds, push and pull pallets weighing hundreds and even thousands of pounds, climb over conveyor belts and up and down ladders, and use hand tools to repair the conveyor system. . . .
>
> The testimony of all the witnesses – including [Plaintiff] – is that the physical parts of the fault chaser job are the reason the jobs exists [sic] – the truly "essential" job functions; riding the buggy is just a means for the fault chasers to get from one end of the warehouse to

>    the other. If the jury believes that testimony, then the accommodation [Plaintiff] claims to have sought is not reasonable.

(Doc. No. 77 at 10-12.) Likewise, as Defendant points out, while Plaintiff contends that he should have been placed in a sedentary job in the warehouse, "[h]e has not . . . established in his motion papers that it is undisputed that such a job was available, that he was competent to perform it, that it was within his medical restrictions, or that it would have been a reasonable accommodation under the ADA." (Id. at 12.) Furthermore, Plaintiff avers that he approached Thomas Gemmell, the director of Defendant's plant operations in York, in 2007 and asked for "light duty." (See Doc. No. 77, Ex. 1 at 30-31.) However, Gemmell denies that Plaintiff ever approached him with such a request.[6] (See Doc. No. 77, Ex. 11 ¶ 8.) This contradiction is yet another genuine issue of material fact which precludes summary judgment.

Plaintiff's motion for summary judgment on his wage discrimination claim that he was denied hourly wage increases based on his age must likewise be denied. Like an ADEA or a Title VII claim, after a plaintiff makes out a prima facie case of ADA discrimination, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir.2000) (quoting McDonnell Douglas Corp., 411 U.S. at 802). Without disputing that Plaintiff has established a prima facie case on his wage discrimination claim, Defendant has put forward evidence that Plaintiff was denied a raise, not on the basis of his disability, but because he failed to merit one after his

---

[6] Plaintiff also asserts that he talked to Joan Beaverson and Melissa Stevenson, both of whom work in Defendant's human resources department, about his desire for a light duty assignment as an accommodation. (See Doc. No. 77, Ex. 1 at 30-31.) However, both Beaverson and Stevenson deny that Plaintiff ever requested a light duty assignment. (See Doc. No. 77, Ex. 9 ¶ 3; Ex. 10 ¶ 6.)

13

performance appraisal. As Defendant points out, such a legitimate business reason, "if the jury believes [it], would be a complete defense to claims of age or disability discrimination in the wage increases." (Doc. No. 77 at 12.) Therefore, a genuine issue of material fact remains, and summary judgment is inappropriate for Plaintiff.

Finally, the Court must also deny Plaintiff's motion for summary judgment on his claim that he was harassed based on his disability because genuine issues of material fact remain. The Third Circuit has outlined the five factors that a plaintiff must meet in order to establish a prima facie claim of harassment:

> A claim for harassment based on disability, like one under Title VII, would require a showing that: (1) [a plaintiff] is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) that [the employer] knew or should have known of the harassment and failed to take prompt effective remedial action.

Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 667 (3d Cir. 1999) (citations omitted). Plaintiff argues that he should be granted summary judgment because Defendant's "employees, including those in supervisory positions, harassed [Plaintiff] on more than one occasion." (Doc. No. 56 at 12.) However, as Defendant points out, there are genuine issues of fact that preclude summary judgment on this particular claim. First, Defendant argues that there is a genuine issue over whether Plaintiff's fellow employees' jokes about Plaintiff's health condition were unwelcome, contending instead that "[t]he record shows that in joking with him about some of his symptoms, his co-workers were attempting to lighten what they perceived was a difficult time for [Plaintiff], and [Plaintiff] joked about his disability himself." (Doc. No. 77 at 13.)

14

Second, Defendant points out that "the record is far from clear that the conduct at issue was severe or pervasive, or that the bantering, as opposed to his apparent medical condition itself, affected [Plaintiff's] ability to do his job." Id. at 13-14. Third, Defendant contends that when it learned of the conduct at issue, it took prompt remedial action. Id. at 14. Clearly, genuine issues of material fact exist and summary judgment is not warranted at this time.

### C. FMLA Claim

Finally, the Court addresses the parties' cross-motions for summary judgment on the FMLA claim. The FMLA states that, subject to specific certification requirements, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA proscribes interference with the Act's prescriptive rights and retaliation based on the exercise of those rights. Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. §§ 2612(a)(1)(D) & 2615(a)). Interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). In comparison, retaliation claims include categorizing "'FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions.'" Callison, 430 F.3d at 119 (quoting 29 C.F.R. § 825.220(c)).

In his motion for summary judgment, Plaintiff argues that "to assert an interference claim, an employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." (Doc. No. 65 at 14.) However, in order to exercise rights under the FMLA, an employee is also put under two affirmative duties. First, the employee "shall make a

reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer[.]" 29 U.S.C. § 2612(e)(2)(A). Second, the employee "shall provide the employer with not less than 30 days notice, before the date the leave is to begin, of the employee's intention to take leave[.]" Id. § 2612(e)(2)(B). However, if "the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable." Id. § 2612(e)(2)(B).

In its motion for partial summary judgment, Defendant points to this affirmative duty and argues that Plaintiff cannot establish a violation of the FMLA because Plaintiff never requested leave in connection with his cancer treatments. (Doc. No. 68 at 8-11.) Defendant argues that Plaintiff was never denied leave in those instances where Plaintiff requested leave. (Id. at 11-12.) In response, Plaintiff argues that summary judgment for Defendant on this claim is not warranted "because there exists a genuine material factual dispute as to whether Defendant had constructive or actual notice of FMLA-associated leave."[7] (Doc. No. 75 at 6.) Plaintiff alleges that "Defendant knew of Plaintiff's battle with cancer" and that therefore "Defendant had

---

[7] Plaintiff argues that, in the case of unforeseen circumstances, "and when the employer has notice of a previous approved FMLA leave, the employer has a further affirmative duty to gather additional information if the notice provided by the employee is insufficient to make a determination." (Id. at 8.) Thus, "[w]hen there is a prior history of medical concerns relative to a subject employee, the employer is on heightened alert that it should inquire further into the FMLA relatedness of the employee's circumstance." (Id.)

As Defendant points out, however, Plaintiff's summation of the notice requirement is a misstatement of the law. (See Doc. No. 79 at 7-8.) According to 29 C.F.R. § 825.303(b), "[w]hen an employee seeks leave due to a qualifying reason, for which the employer has previously provided the employee FMLA-protected leave, the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave. . . ." 29 C.F.R. § 825.303(b). As a result, this provision does not contemplate that the need to take FMLA leave will be based on a qualifying reason that is unrelated to the previous one. Furthermore, in seeking relief based on a previous qualifying reason, an employee must "specifically reference" the need to take leave.

16

advance knowledge that Plaintiff had . . . serious medical conditions that on their face would require Defendant to make further inquiry as part of its obligations . . . ." (Id. at 9-10.) As support for his allegation that Defendant was given notice concerning his cancer, Plaintiff cites to his own statement of material facts, which, in turn, is supported by his own complaint and by his own deposition. (See Doc. No. 75 at 9; see also Doc. No. 64 ¶¶ 10, 11, 13, 45, 46, 47, 51, 52, 58, 87-93.) Aside from his own testimony, then, Plaintiff has not provided any evidence to support his contention that Defendant was given notice. Even though Plaintiff relies exclusively on his own recollection of the facts, a genuine issue of material fact remains over whether Plaintiff provided notice to his supervisors of his desire to take FMLA leave. See Palm Bay Imports, Inc. v. Miron, 55 Fed. Appx. 52, 57 (3d Cir. 2003) (unpublished opinion) (finding that a party may rely on its own deposition testimony in support of a motion for summary judgment); see also Zappan v. Pa. Bd. of Prob. and Parole, 152 Fed. Appx. 211, 217 (3d Cir. 2005) (unpublished opinion) ("Zappan is certainly entitled to rely on his own deposition testimony . . . .").

Yet Plaintiff must still contend with Defendant's alternative argument that Plaintiff did not suffer any harm as a result of requesting FMLA leave, and, as a result, that he is unable to establish a prima facie claim. To establish a claim for interference or retaliation against a plaintiff's FMLA rights, a plaintiff must show that his employer caused him injury relating to his FMLA leave. See Conoshenti, 364 F.3d at 143. Under the FMLA, an "employer is liable only for compensation and benefits lost by reason of the violation, for other monetary losses sustained as a direct result of the violation, and for appropriate equitable relief, including employment, reinstatement, and promotion. The remedy is tailored to the harm suffered." Ragsdale v.

Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002) (internal citations omitted). Specifically, Defendant argues that, even if Plaintiff provided notice of his desire to take FMLA leave, Plaintiff did not suffer any prejudice or harm as a result of any alleged violation of the FMLA:

> [Plaintiff] did not sustain any monetary loss as a result of the alleged violation of the FMLA because even though his early departures from his shift may have been recognized as an attendance problem, his raise was not affected. [Defendant's] performance appraisal system evaluates employees on a scale of 1 to 10 for seven work-related characteristics. The 70-total point scale is banded so that higher scores get higher overall grades: 24-46 is "average," 47-60 is "good." The higher the grade, the higher the wage increase. [Plaintiff] received a 35 of 70 in the appraisal covering the period of his early outs, a solid "average." A perfect "10" out of "10" for attendance (rather than the "7" out of "10" that he received) would have given him the same Overall Evaluation grade of "average." . . . It is noteworthy that on his prior appraisal, which did not cover a period when he was suffering from cancer, . . . [Plaintiff was scored] as an "8" of "10" for attendance.

(Doc. No. 68 at 12-15.) Therefore, Defendant argues that it is due summary judgment on the FMLA claim because there is no evidence that Plaintiff's compensation or benefits were affected by his early departures from shifts in 2006. (Id. at 15.) Plaintiff responds by arguing:

> What Defendant neglects to take into account is whether or not the interference (notation of absences) colored any other part of the evaluation, which evaluation resulted in a lower raise for [Plaintiff]. Further, [Plaintiff] received a lower raise after his 2006 evaluation due to "moving slowly", which was attributable to his foot surgery (which was covered by FMLA leave). Clearly there was harm to [Plaintiff] (or a colorable claim to same) sufficient to withstand summary judgment.

(Doc. No. 75 at 10-11 (citation omitted).)

However, as Defendant points out, "[n]ot even a scintilla of evidence supports [Plaintiff's] contention." (Doc. No. 79 at 10.) Indeed, Plaintiff cites to his own statement of the facts, which in turn relies solely on his own complaint. (See Doc. No. 75 at 10-11; see also Doc.

18

No. 64 ¶¶ 8, 20, 21.) Therefore, by relying solely on his own complaint, Plaintiff has not put forward sufficient evidence to defeat summary judgment. See Anderson, 477 U.S. at 248-50 ("[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.' . . . If the evidence is merely colorable . . . summary judgment may be granted." (citations omitted)).

Therefore, because Plaintiff has failed to present sufficient evidence of a prima facie FMLA claim, his FMLA claim must be dismissed.

## IV.  CONCLUSION

The Court agrees with Defendant that Plaintiff has failed to put forward sufficient evidence to maintain his FMLA claim and his ADEA claim based on denial of his long-term disability insurance. Therefore, Defendant is entitled to summary judgment on these claims as a matter of law. In contrast, Plaintiff is unable to point to a lack of genuine issues of material fact as to all remaining claims. As a result, Plaintiff's motion for summary judgment will be denied. An order consistent with this memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD R. McPHAIL, | : | |
|     Plaintiff | : | Civil Action No. 1:08-cv-0029 |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| ES3 LLC, | : | |
|     Defendant | : | |

## ORDER

**AND NOW**, this 13th day of April 2010, upon consideration of the parties' motions for summary judgment, it is **HEREBY ORDERED** that:

1. Plaintiff's motion for summary judgment is **DENIED** as to all claims.

2. Defendant's motion for partial summary judgment is **GRANTED**. Plaintiff's claims under the ADEA for long-term disability benefits and all FMLA claims are **DISMISSED**.

3. The Clerk of Court is instructed to defer entering judgment on the claims until all claims have been resolved.

                                            S/ Yvette Kane
                                            Yvette Kane, Chief Judge
                                            United States District Court
                                            Middle District of Pennsylvania
                                            Dated: April 13, 2010